MACK KUFFERMAN, PROSECUTOR, v. ALFRED M. ADDISON, TAX COLLECTOR, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF CHESTER, IN THE COUNTY OF BURLINGTON, AND THE EDSAM SCREW MACHINE PRODUCTS CO., INC., DEFENDANTS.

Submitted October 5, 1943—Decided February 17, 1944.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutor, *William C. Gotshalk*.

For the defendants Alfred M. Addison, tax collector, and Township Committee of the Township of Chester, *Howard R. Yocum* (*Herbert Richardson*, of counsel).

For the defendant Edsam Screw Machine Products Co., Inc., *George B. Evans* and *Louis B. LeDuc*.

The opinion of the court was delivered by

HEHER, J. Prosecutor seeks to set aside a public sale of lands by the defendant municipality to its co-defendant, Edsam Screw Machine Products Co., Inc., under *R. S.* 40:60–26, regulating sales of real property by municipalities.

These are the facts: The *locus* consists of two acres of land and a one story building of the factory type, in the center of which is a corrugated iron structure approximately three stories in height. The building was designed for the distilling of apple brandy, and had been used for this purpose until the corporate owner instituted reorganization proceedings under the Federal Bankruptcy Act. The municipality acquired title to the lands by the foreclosure of a tax lien. The decree in Chancery barring the right of redemption was entered on January 15th, 1943, and was recorded in the office of the clerk of the County of Burlington on the ensuing January 20th. The day prior to the recording of the decree, the Edsam Company made an offer to purchase the lands for $4,000, and deposited with the municipality a certified check for $400, to bind the bargain. Thereupon, the local governing body adopted a resolution directing the tax collector to advertise the lands for sale at public auction on February 2d, 1943, at 7:30 P. M., "for the minimum price of $4,000," of which 10% was required to be paid when the lands were struck off and sold, and the balance "within 120 days from the date of sale." The governing body, after investigation, had determined that to be a fair price for the property. The Edsam Company was engaged in the manufacture of ordnance parts for the United States Army; and these lands were desired to meet an urgent need for plant expansion. This was made known to the municipal authorities. The lands were advertised for sale in accordance with the resolution and the cited statute. Prosecutor made an inspection of the premises on the day thus fixed for the sale. He would be interested in the purchase of the property only if it were fully equipped for operation as a distillery; and he found "the column shaft or still" was missing. This was indispensable to operation; and it was then irreplaceable because of the lack of copper necessary for its construction. When he found that "no one

seemed to know anything about it," he asked for a postpone-ment of the sale. He did not attend the sale. The request for an adjournment was made through an agent after the collector had opened the sale and had commenced reading the conditions of sale. The request was considered and denied, and the crying of the sale was resumed. The sale did not embrace the missing still. Federal Internal Revenue officers had removed this particular part from the premises, and had had possession of it "since before 1941." This was done to safeguard the instrument and to prevent an unlawful use of the distilling equipment.

The sole point made by prosecutor is that there was an abuse of discretion in the refusal to adjourn the sale for one week. It is said that it was the duty of the Township Committee and the selling officer "either to find out where the still was and, if it did not care to warrant the title to the still, to give a prospective purchaser an opportunity to form his own judgment as to what he was getting."

Whether the refusal to continue the sale constituted an arbitrary and capricious exercise of the statutory authority must needs depend upon the circumstances which confronted the officer conducting the sale at the time he was called upon to exercise his judgment.

There was substantial ground for believing that if the sale were adjourned, the Edsam Company would withdraw its offer to purchase the property. It had made known the urgency for immediate action, and delay might well result in its looking elsewhere for lands suitable to its purposes. It was not then known to the parties that the column still was in existence. And, if it did exist and its whereabouts could be ascertained without undue delay, there was no assurance that title thereto as a part of the freehold could have been successfully asserted by the township. At all events, the proving of title would in all human likelihood have entailed considerable delay, with the issue in doubt. The adjudication of the Federal District Court in the proceedings brought by the mortgagee would not have been conclusive of the question. Thereafter, there was a physical severance of the still from the real estate. For all that appears, the government

itself might have had a claim that would serve to prevent or unduly delay recovery of the still by the township. The question was not litigated or determined in the equity proceedings to foreclose the right of redemption. And it was not the township's duty, under the circumstances, to prosecute recovery proceedings, or to seek possession of the still, before selling the lands. No such duty arose—the prosecutor seems to think otherwise—out of the fact that the still was a part of the equipment on the lands when the tax assessment was made. Moreover, the prosecutor was not then identified. His financial responsibility was not known to the township officers. He did not undertake to indemnify the municipality against the loss of the bid then made by the Edsam Company. The township officers were told by a real estate broker merely that "we have a customer over here that's interested in bidding but isn't interested in it unless he can find out where the still is and whether all the equipment goes with the building, and we would like to have it postponed."

If the still were not recovered, prosecutor would not interpose a bid. Indeed, he was under no obligation whatever to buy the property. Would it have been prudent to risk the loss of the certain offer presented for the bare contingency of a higher price of undetermined amount? That was a question for the judgment of the local officers, and there is no basis for the conclusion that the action taken was not a reasonable exercise of discretion. There is no contention of *mala fides* or fraud; nor is there a scintilla of evidence to sustain such a charge. The property was sold as it was. If the still remained a part of the real estate, it would have been the purchaser's right to recover it. The condition laid down in the *allocatur* would seem to bind prosecutor to buy the property as is for $5,000, if on a resale the highest bid should be less than that sum. But he could at the outset have tendered the like indemnity against loss by reason of a continuance of the sale, and this he failed to do. He cannot now have the sale set aside because he is willing to pay $1,000 more than was bid. Such a rule would substantially impair the integrity of public sales, and it would therefore be contrary to sound policy.

The writ is accordingly dismissed, with costs.